John Anderson v. The State.

No. 4165. Decided May 19, 1909.

Rehearing Denied June 9, 1909.

1.—Perjury—Indictment.

See opinion for indictment for perjury, as to materiality and falsity of defendant's statements under oath, held to be sufficient.

2.—Same—Charge of Court—Number of Witnesses in Perjury—Credible Witness.

Where upon trial for perjury the court charged the jury that no person could be convicted of perjury except upon the testimony of two credible witnesses, or of one credible witness corroborated strongly by other evidence as to the falsity of defendant's statement under oath, and that a credible witness is one who being competent to give evidence is worthy of belief, and that unless they found that the prosecuting witness was a credible witness they must disregard the whole of his testimony; that the jury are the judges as to whether witness is worthy of belief, the same was sufficient, and there was no error in refusing defendant's special instruction that the witness's character must be above reproach.

3.—Same—Charge of Court—Presumption.

Upon trial for perjury there was no error in refusing defendant's special charge that the law presumed the testimony of the defendant set out in the indictment to be true and of equal value of any other one witness. The law attaches no presumption of credibility or truthfulness to the allegations in a perjury indictment.

4.—Same—Severance—Principal—Accomplice—Accessory.

In order to entitle a defendant to a severance, he must be indicted separately or jointly with another for the same offense, or for a matter growing out of the same transaction; and the evidence must show that he could be tried and convicted as principal, accomplice or accessory for the offense for which he is tried; and the appellate court will not look to the statement of facts in passing on this question.

5.—Same—Case Stated—Same Transaction.

Where two persons are indicted in separate indictments for perjury and the assignment of a perjury against each is identical or nearly so, they cannot claim a severance, as perjury is an offense for which two persons cannot be jointly indicted in the absence of a conspiracy each with the other to commit perjury. Each defendant is charged with a separate and distinct offense, although the perjury assigned may relate to the same transaction; such a state of case is not within the purview of article 807 Code Criminal Procedure, which provides that where persons stand indicted of an offense growing out of the same transaction they are entitled to a severance.

6.—Same—Evidence—Bill of Exceptions—Harmless Error.

Where upon trial for perjury the State was permitted to introduce the testimony of defendant made in an inquest proceeding, and the bill of exceptions in the record on appeal did not state that the inquest inquiry was about a matter different from that upon which the prosecution in the case on trial was predicated, there was no error; besides the testimony could not have injured defendant's rights.

**7.—Same—Credible Witness—Proof Required in Perjury.**

Upon trial for perjury, the definition that a credible witness is one, who being competent to give evidence, is worthy of belief is generally sufficient, unless the State's witnesses have been impeached as to their general reputation for truth and veracity; in such case the charge of the court as to said State's witness credibility should instruct the jury that his character for truth must be above reproach, not that his character is above reproach, as there is a vast difference between a witness' character and his reputation for truth.

Appeal from the District Court of Guadalupe. Tried below before the Hon. M. Kennon.

Appeal from a conviction of perjury; penalty, two years confinement in the penitentiary.

The opinion states the case.

*Dibrell & Mosheim,* for appellant.—On question of severance: Crutchfield v. State, 7 Texas Crim. App., 65; Shaw v. State, 39 Texas Crim. Rep., 161. On question of admitting testimony at inquest trial: Lewis v. State, 15 Texas Crim. App., 647; Hyden v. State, 31 Texas Crim. Rep., 401. On question of definition of credible witness: Smith v. State, 22 Texas Crim. App., 196. On question of refusing defendant's special charge on evidence required and presumption of truth of defendant's statement: State v. Heed, 57 Mo., 252; 2 Wharton Criminal Law, sections 22-76; State v. Raymond, 20 Iowa, 582; Crusen v. State, 10 Ohio St., 258; Hendricks v. State, 6 Ind., 493.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of perjury, and his punishment assessed at two years confinement in the penitentiary.

The indictment in this case is as follows: "The grand jurors for the county of Guadalupe, State aforesaid, duly organized as such at the fall term, A. D. 1907, of the District Court of Guadalupe County, upon their oaths present in and to said court that John Anderson, on or about the 15th day of May, 1907, and anterior to the presentment of this indictment in the county of Guadalupe and State of Texas, in and before the District Court of Guadalupe County, at its regular term, holden in and for, and then and there in session in said county, the Hon. M. Kennon, who was then and there the legally qualified judge of said court, presiding; and in a certain criminal judicial proceeding in said court, and of which said criminal judicial proceeding the said court then and there had jurisdiction, and in which said criminal judicial proceeding the State of Texas was plaintiff and Charley McClure was defendant, and wherein said Charley McClure was duly and legally charged by indictment with having killed and murdered one Wash Anderson, in that it was thereby then and there so charged that Charley McClure, on or about the 4th day of November, 1906, in the county of Guadalupe and State of Texas, did then and there (meaning the time and place last above mentioned) unlawfully, with malice aforethought, kill Wash Anderson by then and there (meaning the time and

place last above mentioned) shooting him, the said Wash Anderson with a pistol and a gun, and by then and there (meaning the time and place last above mentioned) stabbing and cutting him, the said Wash Anderson, with a knife and other sharp instrument, and by then and there (meaning the time and place last above mentioned) striking and beating him, the said Wash Anderson, with a stick and a rock, and by then and there (meaning the time and place last above mentioned) burning him, the said Wash Anderson, with fire, and by then and there (meaning the time and place last above mentioned) using other means and instruments to these grand jurors (meaning the grand jurors who presented said indictment) unknown, by which he killed and murdered him, the said Wash Anderson, against the peace and dignity of the State, and in which said criminal judicial proceeding issue was then and there, in said court, in said county and State, on or about said May 15, 1907, aforesaid, duly and legally joined between said State of Texas and the said Charley McClure, and came on to be tried in due form of law before said judge and a jury duly organized in said cause, and in that behalf legally empaneled and sworn, and was at said last mentioned time and place tried before said judge and jury, and then and there, in said court, upon the said trial, John Anderson came and appeared in person as a witness in behalf of the State of Texas, and was then and there, in and before said court, at and during said trial, duly and legally sworn, and did then and there take his corporal oath before said court and jury as a witness to testify in said cause on said trial, which oath was then and there required by law and necessary for the ends of public justice; and which said oath was then and there, in said court, on said trial, duly administered to him, the said John Anderson, as aforesaid, by John T. Campbell, the clerk of said court, who was, when administering same, then and there authorized and qualified by law to so administer the said oath in that behalf and in the matter and cause aforesaid, and at and upon the said trial of the said issue, joined as aforesaid, between the said parties, as aforesaid, it then and there became and was a material question and inquiry whether said Charley McClure, at a place where said John Anderson and others had been gambling, about two miles or two and a half from said Wash Anderson's house, on the night of November 2, 1906, said that he, Charley McClure, was going to kill him, the said Wash Anderson, and whether said Charley McClure, at the time and place last named, speaking to said Wash Anderson, further said, 'You might as well give him (meaning Louis McClure) a stake; God damn you, I am going to kill you, anyway,' and whether said Charley McClure, at said last named time and place, said to Wash Anderson, 'I intended to kill you long ago for ordering me out in front of old lady Bell,' and whether said Charley McClure, at said last named time and place, said to Wash Anderson, 'I intended to kill you, and I am going to kill you;' and the said John Anderson, being so sworn as aforesaid, then and there, in said court, before said judge and jury,

on the trial of said issue and cause, upon his said oath administered to him as aforesaid, did, under the sanction of said oath administered to him as aforesaid, falsely, wilfully and deliberately, before the said court, judge and jury, depose, state and testify (among other things)' in substance and effect as follows, to wit: that said Charley McClure, at a place where said John Anderson and others had been gambling, about two miles or two miles and a half from said Wash Anderson's house, on the night of November 2, 1906, said that he, Charley Mc-Clure, was going to kill him, the said Wash Anderson, and speaking to said Wash Anderson further said, 'You might as well give him (meaning Louis McClure) a stake; God damn you, I am going to kill you, anyway,' and 'I intended to kill you long ago for ordering me out in front of old lady Bell,' and 'I intended to kill you, and I am going to kill you;' and which said statements, and each of them, and every part thereof, so made by the said John Anderson, were then and there, in said court and on said trial, material to the issue in said cause; whereas, in truth and in fact, said Charley McClure was not, on said night of November 2, 1906, at said place where said John Anderson and others had been gambling, about two miles or two miles and a half from Wash Anderson's house, and did not, at said time and place last named, speak a single word to said Wash Anderson, and did not, at said last named time and place, or at any time or place, say that he, Charley McClure, was going to kill him, said Wash Anderson, and did not, at said time and place last named, or at any time or place, say to Wash Anderson, 'You might as well give him a stake, God damn you, I am going to kill you, anyway,' and did not, at said last named time and place, or at any time or place, say to Wash Anderson, 'I intended to kill you long ago for ordering me out in front of old lady Bell,' and did not, at said time and place last named, or at any time or place, say to Wash Anderson, 'I intended to kill you, and I am going to kill you,' and did not, at said last named time and place, or at any time or place, use said language set forth in said statement of said John Anderson, or any part of it, to said Wash Anderson; and which said statements, and each of them, and every part of them and each of them, so made by said John Anderson as a witness in said cause, in the manner and form aforesaid, were deliberately and wilfully made, and were deliberately and wilfully false, as he, the said John Anderson, then and there well knew when he made same, against the peace and dignity of the State."

Appellant files the following motion to quash the indictment:

1. "Because said indictment fails to charge any offense against the criminal laws of this State, and of this general exception defendant prays judgment of the court.

2. "Because said indictment does not allege and charge affirmatively, and in plain and unequivocal language, that there was pending before the District Court of Guadalupe County a criminal judicial proceeding in which defendant was called to testify and give evidence.

3. "Because said indictment alleges that the material question and inquiry before said court was: 'Whether said Charley McClure, at a place where said John Anderson and others had been gambling, about two miles or two miles and a half from Wash Anderson's house, on the night of November the 2d, 1906, said that Charley McClure was going to kill him, the said Wash Anderson, and whether said Charley McClure, at the time and place last named, speaking to said Wash Anderson, further said, 'You might as well give him (meaning Louis McClure) a stake; God damn you, I am going to kill you, anyway,' and whether said Charley McClure, at said last named time and place, said to Wash Anderson, 'I intended to kill you long ago for ordering me out in front of old lady Bell,' and whether said Charley McClure, at said last named time and place, said to Wash Anderson, 'I intended to kill you, and I am going to kill you,' and said indictment further alleges and charges that the witness, John Anderson, testified in substance the matters and things alleged to be material, as hereinbefore set out, and said indictment fails to negative the truth of said testimony and state the true fact, as required by law, said negativing clause being as follows: 'Whereas, in truth and in fact, said Charley McClure was not, on said night of November 2, 1906, at said place where said John Anderson and others had been gambling, about two miles or two miles and a half from Wash Anderson's house, and did not, at said time and place last named, speak a single word to said Wash Anderson, and did not, at said last named time and place, or at any time or place, say that he, Charley McClure, was going to kill him, said Wash Anderson, and did not, at said time and place last named, or at any time or place, say to Wash Anderson, 'You might as well give him a stake, God damn you, I am going to kill you, anyway,' and did not, at said last named time and place, or at any time or place, say to Wash Anderson, 'I intended to kill you long ago for ordering me out in front of old lady Bell,' and did not, at said time and place last named, or at any time or place (say to Wash Anderson, 'I intended to kill you, and I am going to kill you,' and did not, at said last named time and place, or at any time or place), use said language set forth in said statement of said John Anderson, or any part of it, to said Wash Anderson, and in said negativing statement it will be observed that the indictment alleges a legal conclusion in regard to said Charley McClure not being at a place where gambling was going on, about two miles or two miles and a half from Wash Anderson's house, and said indictment should have alleged where said Charley McClure was on the night of November the 2d, 1906, so that it might be determined by the court whether or not he was at said place, it being a material assignment that what was said was said at a certain time and place, and in failing to make this allegation said indictment is fatally defective.

4. "Said indictment nowhere alleges that Wash Anderson's house was burned on the night of November the 2d, 1906, or that Wash Anderson came to his death on November the 2d, 1906, or at any other

time, which defendant says was necessary in order to render said statements material.

"Wherefore defendant says that said indictment is wholly insufficient to maintain this prosecution against defendant for perjury, and he moves to quash said indictment."

Without taking up seriatim appellant's different contentions, we will say that the above indictment is in all things sufficient. It affirmatively alleges the fact upon which perjury is predicated, and we have repeatedly held it is not necessary to allege how or wherein the testimony is material. The indictment does allege the testimony is material, and the indictment furthermore alleges that said testimony of appellant was then and there wilfully and deliberately made, and was deliberately and wilfully false. We have carefully examined this indictment, and quote it and the assignments, believing that in this way we can more accurately present appellant's contentions, and must hold that the indictment is sufficient.

Appellant asked the court below to give special charge No. 1, which is as follows: "In this cause the jury is instructed that, in connection with the general charge given by the court relating to the number and character of witnesses necessary to convict in cases of perjury, you are further instructed that a 'credible witness,' such as has been referred to in said general charge, is one whose character is above reproach. If the jury believe from the evidence that the witnesses, Charley McClure and Louis McClure, are not credible witnesses, or if you have a reasonable doubt as to whether they are credible witnesses, you must disregard their testimony." In defining a credible witness the court used the following language: "A credible witness is one who, being competent to give evidence, is worthy of belief. All witnesses permitted to testify upon the trial are 'competent to give evidence,' but you are the exclusive judges as to whether a witness is 'worthy of belief.'" Furthermore, the court subsequently gave the following charge: "You have already been instructed that, in trials for perjury, no person shall be convicted except upon the testimony of two credible witnesses, or of one credible witness corroborated strongly by other evidence as to the falsity of the defendant's statement under oath; and that a 'credible witness' is one who, being competent to give evidence, is worthy of belief. In this connection you are instructed that, unless you find that the witness Charley McClure is a credible witness, you must disregard the whole of his testimony; and unless you find that the witness Louis McClure is a credible witness, you must disregard the whole of his testimony." These charges, we think, clearly answer appellant's contention, and is a proper definition of what is a credible witness. Appellant's charge is not correct, since the same contends for the proposition that a credible witness is one whose character is above reproach. This is not a true criterion. One might be a credible witness and yet not above reproach. It follows, therefore, the court did not err in refusing the special charge.

Appellant's special charge No. 2 is as follows: "The jury are instructed that the law presumes the testimony of the defendant set out in the indictment to be true, and of equal value to the testimony of any other one witness; and in order to convict the defendant of perjury the State must satisfy the jury, beyond a reasonable doubt, of its falsity, and that by the testimony of more than one credible witness, or by the testimony of one credible witness and other circumstances tending strongly to corroborate such witness; and unless the falsity of the testimony alleged in the indictment has been established by an amount of evidence greater than the testimony of one witness bearing upon that point, the jury must find the defendant not guilty." As far as this charge is accurate it was covered in the main charge of the court. We know of no rule of law that lays down the proposition that the law presumes the testimony of the defendant, set out in an indictment, to be true, and of equal value to the testimony of any other one witness. The latter clause would clearly be a charge upon the weight of evidence. The first clause is erroneous as a matter of law. The law attaches no presumption of credibility to the allegation in a perjury indictment of truthfulness. Evidently the learned counsel has mixed in his mind the presumption of innocence with legal presumption of veracity of statement. The allegation in the indictment proves nothing. It takes testimony to prove the facts. No presumption of guilt attaches from the indictment, but, as stated, the law does not presume predicate for perjury to be true. In fact, there is no presumption one way or the other about it. Special charge No. 3 was covered by the court's main charge.

Bill of exceptions No. 1 shows that appellant made and presented to the court his certain written affidavit, requesting a severance, and asking that Ex Anderson be placed upon trial first, so that appellant might have the advantage of the testimony of said Ex Anderson, it being shown that Ex Anderson was indicted for perjury growing out of the same trial, and the assignment of perjury in the case against said John Anderson being identical, or nearly so, with the assignment of perjury against Ex Anderson, which application for severance is as follows: "Now comes John Anderson, defendant in the cause above numbered and styled, and represents that Ex Anderson is indicted for an offense growing out of the same transaction as the one for which this defendant is indicted, but under separate indictments, and that the testimony of said Ex Anderson is material for the defense of this affiant, John Anderson, and he verily believes that there is not sufficient evidence against the said Ex Anderson, whose evidence defendant desires, to secure the conviction of said Ex Anderson. And affiant prays that said Ex Anderson be first placed on trial." The bill is approved, with this statement on the part of the trial court: "That perjury is an offense for which two persons can not be jointly indicted, the statements, though in substance the same, and occurring upon the same trial, constituting separate and distinct offenses." In the case of

King v. State, 35 Texas Crim. Rep., 472, this court held that, where
an application for a severance, to procure the testimony of another de-
fendant, which was properly made, was overruled in the trial court,
this court on appeal will not look to the statement of facts to deter-
mine whether the defendant has been injured in refusing him the right
to have the other defendant first tried. So, in this case we will not
look to the statement of facts in passing upon the question as to
whether appellant has been injured by the ruling of the court. Now,
reverting to the bill of exceptions, which is practically copied above,
it will be seen that the statement is made that "the assignment of
perjury in the case against said John Anderson being identical, or
nearly so with the assignment of perjury against Ex Anderson." Ar-
ticle 707 of the Code of Criminal Procedure provides that, "Where two
or more defendants are prosecuted for an offense growing out of the
same transaction," etc., they can seek a severance, and the same must
be granted, but, as stated by the learned trial court in this case, the
parties could not be jointly indicted for this offense, and the fact that
each of them is indicted for swearing falsely in a given trial, the fact
that the falsity is based upon a statement alleged to be untrue, sub-
stantially the same in each indictment, does not make it the same
transaction within the contemplation of article 707 of the Code of
Criminal Procedure, but the offense is a separate and distinct transac-
tion. If the indictment in this case had charged that John Anderson
entered into a conspiracy with Ex Anderson to swear falsely, or the
facts should have so shown, and did get upon the stand on the trial,
in compliance with said agreement, and did swear to the same thing
that Ex Anderson swore to, they would then be chargeable and charged
with the same offense, having previously agreed to commit it, but the
indictment before us has no such allegation, and, as suggested above,
we will not look to the statement of facts to ascertain whether the other
indictment does or not, or the evidence suggested that it does or not.
Suppose appellant in this case had been acquitted instead of convicted,
and then the case of Ex Anderson had come on under the charge of
perjury to be tried, and the appellant placed upon the stand by the
State as a witness against Ex Anderson? Could it be accurately in-
sisted that appellant was an accomplice or a principal with Ex Ander-
son? We hold not, the facts only showing that they were each indicted
for perjury, and had practically sworn to the same thing. These facts
alone do not show conspiracy or acting together, therefore they consti-
tute a separate and distinct offense, as suggested by the trial court.
We accordingly hold that the court did not err in refusing the sever-
ance in this case.

Bill of exceptions No. 5 shows that the State offered in evidence
the following statement made by the defendant, John Anderson, be-
fore Geo. R. Dix, justice of the peace precinct No. 5, Guadalupe
County, holding an inquest over the body of Wash Anderson, the de-
ceased, to wit: "My name is John Anderson. I live on Nashes Creek.

The deceased man, Wash Anderson, is my brother. I saw the deceased man, Wash Anderson, about three o'clock on the morning of November 3, 1906. We were at a supper on Nashes Creek. Everything went off all right at the supper. I left about three o'clock. The next time I saw Wash Anderson, deceased, was at his house, dead." Appellant objects to the introduction of this testimony because said statement did not in any manner tend to contradict any statement made by the defendant, John Anderson, as a witness against Charley McClure, and did not tend in any manner to disprove the alleged statement of the defendant, John Anderson, assigned as perjury in this case, and because said statement had no reference to what took place at the place where it was alleged that gambling had been going on, on Nashes Creek, and because it was evident that the only inquiry made of the witness, John Anderson, was in regard to when he saw Wash Anderson last before his death, and whether or not everything went off all right at the supper, and because said statement so offered by the State to contradict John Anderson was immaterial and irrelevant to any issue involved in the case. We think this testimony is admissible, but if appellant's objections are correct and well taken, then the testimony from that standpoint could not have injured appellant. However, we do think it tended strongly to support the State's case and show that the testimony given upon the trial of Charley McClure was deliberately made, and false, since he says everything went off all right, when, as a matter of fact, on the trial of Charley McClure, he proposed and did detail an angry colloquy between deceased and said McClure.

We have passed on all of appellant's assignments of error that we deem necessary to review in this case, and must say that the evidence clearly supports the verdict. The charge of the court is an admirable presentation of the law applicable to the facts of this case, and the judgment is in all things affirmed.

*Affirmed.*

### ON REHEARING.

#### June 9, 1909.

BROOKS, JUDGE.—This case was affirmed on a previous day of this term, and now comes before us on motion for rehearing.

Appellant's first ground of the motion is that this court erred in refusing to sustain appellant's fourth assignment of error, wherein appellant complains that he should have been granted a severance. We held in the original opinion that, in order to entitle a defendant to a severance, where he was indicted separately or jointly for the same offense, or for a matter growing out of the same transaction, that he would not be entitled to said severance unless the evidence showed that he could be tried and convicted as principal, accomplice or accessory for the offense for which he was tried. Appellant controverts this statement in his motion, and insists that the statute is broader,

and that the court put an unwarranted limitation upon the provisions of the statute. In this connection appellant cites us to article 807 of the Code of Criminal Procedure, which provides that, where a person stands indicted for an offense growing out of the same transaction, that he is entitled to a severance, insisting that the word "transaction" in the statute has a broader signification and meaning than the court gave same. We do not think so. We are apprised of no decision of this court interpreting this word in the severance statute, and appellant cites us to none, but it occurred to us then and now that, if two parties attend a ball, and one commits a rape and the other a murder at said ball, that it would be an erroneous and tortious construction of this severance statute to say that they could claim a severance on the ground that the two offenses, or that each offense, grew out of the same "transaction." It might be that the ball was the occasion of both crimes. Or suppose two parties are working in a field, engaged each in plowing side by side, and one kills one of the mules he is plowing with a pistol, and the other takes the pistol and shoots a man, no complicity being shown by the transaction or acting together on the part of the defendants. Certainly they could not claim a severance within the purview of the statute under consideration on the ground that the two offenses grew out of the same transaction. Now, appellant and his brother were indicted for perjury. There is nothing in the record, nor in the indictment, to show that they agreed, each with the other, to commit perjury, and, therefore, they become separate and distinct offenses. There is no suggestion in the indictment against this appellant that he committed subornation of perjury, or that he agreed with his brother to commit perjury. While it is true they both swore falsely as to whether a certain party was at a certain game of cards upon Nashes Creek, and both swore in substance that he was, yet there is no agreement shown between them to do so; there is no suggestion in the record that the testimony that would lead to the conviction of one would bring about the conviction of the other. We therefore adhere to the original opinion on this question. Appellant cites us to the case of Crutchfield v. State, 7 Texas Crim. App., 65. In that case defendant, being on trial for theft, proposed to introduce as a witness a person who in a separate indictment was charged as a receiver of the stolen property. Held, that the proposed witness was properly excluded, in view of the provision of the Code which disqualifies principals, accessories and accomplices from testifying in behalf of each other. We readily agree to this proposition, and it clearly appears to us it is not at variance in any respect from the original opinion in this case. Where parties are indicted as principals, accomplices or accessories, then they are particeps criminis to the main offense, and certainly would be entitled to a severance upon a proper legal showing, but the appellant is not indicted in that manner, nor is any contention made in this record that Ex Anderson, his brother, was connected in

any way with the criminal act on the defendant's part in swearing falsely. There is no bill of exceptions in this record complaining that the court refused to permit Ex Anderson to testify, but the severance is only insisted on the theory that they wanted Ex Anderson tried first. We know of no rule of law that disqualifies Ex Anderson from testifying if he had been offered in this case. Appellant further cites us to the case of Shaw v. State, 39 Texas Crim. Rep., 174, wherein it was held that a defendant has a right to have a witness in his behalf testify free from the cloud cast upon his reputation by an indictment, where such indictment grows out of the same transaction. We know of no provision of the Constitution that would be invaded by depriving a defendant of this right. It is clearly a statutory right, and we see nothing in the Shaw case, *supra,* to sustain appellant's contention that it is a constitutional right. We think it is a salutary statute, and, where its letter or spirit is violated, we would not hesitate to reverse a case, but the law of severance is purely statutory. We have read with interest and pleasure appellant's able motion for a rehearing, and have reviewed all of his authorities on the ground just discussed in his motion, and must say that the original opinion on this question is correct.

Appellant's second ground of the motion for rehearing complains the court erred in refusing to hold that the testimony taken before the inquest held by Geo. R. Dix over the body of Wash Anderson, as it affected the statement of John Anderson, was incompetent, irrelevant, immaterial and prejudicial to a fair and impartial trial of John Anderson. The contention of appellant that this statement was improperly admitted as evidence against him is based upon the fact that it was not offered for the purpose of impeaching defendant as a witness, and because it was an inquiry made by a justice of the peace, direct and specific, as to what had occurred at a supper given on Nashes Creek. That the statement does not disclose, nor does any fact connected with the inquest, that the justice of the peace knew anything about the gambling that had been going on the night Wash Anderson was burned to death, but it was known that there was a supper that night, and all the parties had been seen at the supper at one time and another that night. That the place of the supper and the place of the gambling were two separate and distinct places. Appellant further contends that this fact should not be ignored by the court, for it is a fact, and as much a fact as the city of Austin and the city of San Antonio constitute distinct and separate places. Appellant further contends that the question asked defendant was, Whether everything went off all right at the supper, and he answered "Yes." That if he had been interrogated about what had happened at the place of gambling his statement would have been pertinent, and would have been admissible, and would have been a strong circumstance tending to show that he had sworn falsely on the trial of the McClures. We have stated appellant's insistence in his motion for rehearing fully in order to re-

view the matter anew. By consulting the original opinion it will be seen that appellant is correct in saying that the defendant testified at the inquest as follows: "We were at a supper on Nashes Creek. Everything went off all right at the supper. I left about three o'clock. The next time I saw Wash Anderson, deceased, was at his house, dead." This is all the bill of exception states as to what he swore. Then follows appellant's objection. Appellant's objections state, as he now contends in his motion, that the transaction was at another and different place; that is, the supper was at one place on Nashes Creek and the gambling at another, but the bill does not show this. It is the uniform rule of this court that objections to testimony are not statements of fact, and will not be treated as such. Then, outside of appellant's objections in his bill of exceptions, there is nothing to indicate that the supper on Nashes Creek was not at identically the same place and time that the gambling was. So, in this particular the bill of exception, from appellant's standpoint, is inaccurate, but this is a matter that we can not assist him about. We have to take the bill of exception as we find it. That grounds of objection in bills of exception are not statements of fact is a rule so well settled we do not deem it necessary to cite authorities. But if the inquest inquiry was about a matter different from that upon which the prosecution in this case is predicated, as stated in the original opinion, it would still be harmless error to introduce the statement, because it would have no legitimate, pertinent or criminative bearing upon the issue in this trial, but this fact, as stated, does not appear in the bill. For all that the bill shows the evidence might have shown, at the time this testimony was introduced, that the supper and gambling were at such proximity one to the other, and had such pertinent bearing one upon the other, as to make them practically one and the same occasion.

The third ground of the motion complains the court erred in refusing to sustain appellant's seventh assignment of error for the reason that, in a case where the witnesses by whom the State seeks to prove the falsity of the alleged testimony given by the person charged with perjury, the definition that a credible witness is one who, being competent to give evidence, is worthy of belief, is as a general rule sufficient, but where the State's witnesses have been impeached by reputable citizens, to the effect that their general reputation for truth and veracity is bad, and where they are self-confessed criminals, gamblers, etc., the charge asked by appellant to the effect that such witnesses, to be credible, should be above reproach, should have been given. To support appellant's contention, wherein he contends that the court erred in refusing to give the definition of a credible witness, he cites us to the case of Smith v. State, 22 Texas Crim. App., 196. As stated by appellant, and we heartily concede the accuracy of the decision, which was rendered by our eminent and lamented Judge White, it was there held that a credible witness is one whose character for truth is above reproach. This was not the charge asked by appellant, however.

The charge appellant asked was as follows: "In this cause the jury is instructed that, in connection with the general charge given by the court relating to the number and character of witnesses necessary to convict in cases of perjury, you are further instructed that a 'credible witness,' such as has been referred to in said general charge, is one whose character is above reproach." There is a vast difference between a witness' character and his reputation for truth being above reproach. We cheerfully concede both the fact that appellant is wrong in his contention and that he cites good authorities, but there is a clear misapprehension of the authorities.

We have been entertained by appellant's able motion for rehearing, and especially wish to commend his research and industry in the preparation of this motion, but must say that after a very careful and painstaking review of the record, in the light of his motion, that there is no such error in the record as authorizes the granting of this motion, and same is hereby overruled.

*Overruled.*